IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2008 AUG -8 P 1: 53

AISE CANNON,

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Plaintiff,

v.                                                      CV-07-900-WKW

LANSING BUILDING PRODUCTS, INC,

Defendant.

**PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO
DEFENDANT'S SUMMARY JUDGMENT MOTION**

COMES NOW Plaintiff Aise Cannon and files this response to Defendant's Motion for

Summary Judgment.

Title VII of the Civil Rights Act of 1964, as amended by the 1991 Civil Rights Act; 42

U.S.C. §1981, as amended by the 1991 Civil Rights Act. See; 42 USC §2000e-2, 42 U.S.C. §§

1981 (a) & (b); § 760, et. seq.. Each statute also prohibits retaliation for filing or participating in

a complaint of discrimination. The disparate treatment analytical framework developed under

Title VII is equally applicable to claims of discrimination under § 1981.

**DISPUTED FACTS**

An individual seeking to pursue a claim under Title VII of the Civil Rights Act of 1964,

the Americans With Disabilities Act, or the Age Discrimination in Employment Act must file a

charge with the EEOC within 180 days (or 300 days in deferral states) of the alleged unlawful

employment practice. However, the courts have construed this administrative deadline to be

more in the nature of a statute of limitations than a jurisdictional prerequisite to later filing suit. It

is therefore subject to "equitable tolling" under certain circumstances.

**PLAINTIFF'S OPPOSING STATEMENT TO DEFENDANT'S UNDISPUTED FACTS**

1. The Plaintiff admits and concurs with the Defendant's Statement of Undisputed Facts contained in the first paragraph of its Brief, up to a point. (Def. Brief, Facts, p. 2)

Specifically plaintiff states that the "other reasons" for her termination was the continued retaliation for her complaining about the failure of Lansing to promote her. (Cannon's Affidavit, ¶ 1.)

Lansing noted in its Statement of Facts  that:

> Cannon does not know of any Lansing employee who was ever suspended, instructed not to come back to work, came back to work anyway, and was not terminated." (Cannon dep., p. 11)

Mrs. Cannon states that after she complained about the promotion her work activities was scrutinized more closely than other employees and that prior to her complaints she was not subject to such scrutiny.   (Cannon's Affidavit, ¶ 2.)

2. The Plaintiff admits and concurs with the Defendant's Statement of Undisputed Facts contained in the second paragraph of its Brief, up to a point. (Def. Brief, Facts, p. 2). That point is that Lansing's statements that "Cannon admits that she was not asking the EEOC to take action in her July 25 letter to the EEOC." is incorrect.  (Def. Brief, Facts, p. 2). The record reflects the following exchange concerning the July 25 letter to the EEOC, viz,

```
 9  Q     (BY MR. HANCOCK :)  Now, did you
10  have a lawyer at the time you sent the
11  letter to the EEOC on July 25th, 2006?
12  A      Not at the time.
13  Q      Tell me why you -- well, did you
14  file that July 25 letter with the EEOC for
15  information purposes, to put the EEOC on
16  notice of something, or why did you file
17  it? Do you remember?
18  A      I was going through the process
19  of what -- when I called the EEOC, they gave
```

20  me a list of steps that I had to go through
21  and I was following their procedures. (Cannon dep. P.   26)


6  Q      (BY MR. HANCOCK:) When you sent
7  the letter to the EEOC in July of 2006, you
8  weren't asking the EEOC to do anything yet,
9  were you?
10  A      Yes, I was.  But as I said, we
11  have to follow certain procedures. (Cannon dep. P.  30)


3. The Plaintiff does not concur with the Defendant's Statement of Undisputed Facts contained in the third paragraph in the facts section of its brief. Plaintiff testified that Chris Black informed her that she was passed over for a promotion because the company deals with "rednecks" and if they put her in that position, they would look at him like he was crazy. (Cannon dep. P.  19)

4. The Plaintiff does not concur with the Defendant's Statement of Undisputed Facts contained in the fourth, fifth, and sixth paragraphs in the facts section of its brief rather she complained because her purpose for filing a Charge of Discrimination with the EEOC was to address all the discriminatory actions taken against her by the Defendant.

5. The Plaintiff does not concur with the Defendant's Statement of Undisputed Facts contained in paragraph 7 in the facts section of its brief because it is misleading. Plaintiff was unemployed from June 5, 2006 until September 2006. (Cannon's Affidavit, ¶ 3).

6. Plaintiff testified that she followed the company procedure in complaining about regarding the denial of a promotion. Her testimony is as follows:
                                        11
7  Q      About a year earlier, Ms. Cannon,
8  you had made a complaint to the Lansing
9  human resources department; is that true?
10  A      Yes, I did.
11  Q      Do you know who you spoke with up
12  there?
13  A      Cindy Williams.

12

```
12  Q      Who is Chris?
13  A      Chris Black was the branch
14  manager at the time I was there.
```

13

```
12        Was it your understanding that
13  you could complain all the way up the
14  channels of the Lansing Building Products
15  company if you had an employee complaint?
16  A      Yes, it was.
17  Q      You felt comfortable raising
18  concerns that you had about your employment
19  all the way up the channels in the company,
20  didn't you?
21  A      Yes, I did.
22  Q      You have a military background,
23  don't you?
```

14

```
1  A      Yes, I do.
2  Q      You understand procedures and
3  protocols?
4  A      Yes.
5  Q      And you understand that you
6  always have a recourse if you have a
7  complaint to go up --
8  A      Yes, I do understand that
```

*(Cannon dep. P. 11, 12, 13, and 14)*

7. Plaintiff testimony regarding the promotion that was denied to her was as
follows:

14

```
12  A      Okay.  A position became open,
13  branch operations manager position, and
14  someone else was hired in that position
15  other than myself.
16  Q      Who was hired?
17  A      Mike -- Michael Haynes.  And my
18  understanding was that since Chris, who was
19  the branch manager and also a white male --
20  he was promoted from sales manager to branch
21  manager.  And Michael -- Tom Cleveland, who
22  was my supervisor before Michael Haynes
23  came, he was promoted from warehouse manager
```

15

```
1   to branch operations manager before I came
2   and he was also a white male.  So, my
3   understanding was that I would also be
4   promoted to the BOM position.
5          So, whenever I did not get the
6   position, I contacted Cindy Williams to
7   complain to her about me being passed over
8   for the position.  And she suggested that I
9   make my concerns known to Chris Black and
10  then contact her back and let her know what
11  he said.  And that is what I did.
```
                                                             *(Cannon   dep.   P.*
*14 and 15)*


## MEMORANDUM OF LAW

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when no genuine issue as to any material fact exists,

and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56 (c).* The

Eleventh Circuit has discussed the standard for granting summary judgment:

Summary judgment is proper pursuant to *Federal Rules of Civil Procedure 56(c)* "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law. *Adams v. Poag*, 61 F.3d 1537, 1542 (11th Cir.),

reh 'g and suggestion for reh 'g en banc denied,   70 F.3d 1287 (11th Cir. 1995) (quoting *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed 2d 265 (1986)).

A ruling on summary judgment should be guided by the substantive evidentiary standard

of proof that would apply at a trial on the merits. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should be granted unless a "fair-

minded jury could return a verdict for the [nonmoving party] on the evidence presented. 477 U.S.

at 251-252. Summary judgment should be granted unless "the record taken as a whole could ... lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (1986).

### THIS COURT HAS JURISDICTION TO HEAR MRS. CANNON'S CLAIM

Defendant asserts that Mrs. Cannon's charge of discrimination was not timely filed with the Equal Employment Opportunity Commission. (EEOC).

The facts show that the EEOC completed its investigation and on July 10, 2007 issued a "Notice of Right to Sue" to Plaintiff. (See, Dismissal and Notice of Rights). This document has a check box provided to dismiss the charge and states,

> "Your charge was not filled timely with the Commission, i.e., you waited too long after the date (s) of discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations."

This box is not checked. The EEOC investigated the allegations and issued a Right to Sue Notice to Mrs. Cannon. The EEOC is empowered with enforcement provisions. *42 U.S.C § 2000e-5.* The content of the EEOC's Dismissal and Notice of Rights to Sue shall include, "The Commission's decision, determination, or dismissal, as appropriate." *29 C.F.R § 1601 28 (e)(4).* The EEOC did not dismiss the charges as time-barred. Therefore defendant's assertion as to timely filing of the charge of discrimination with the EEOC has no merit.

### THE CHARGES THAT MRS. CANNON FILED ARE AN ADEQUATE PREDICATE TO THE CLAIM RAISED IN HER COMPLAINT.

Defendant argues that because Mrs. Cannon's allegation in her complaint that she was subject to retaliation because she complained about being denied a promotion was not in her Charge of Discrimination is not appropriate for consideration by this court.

For nearly 40 years, the Eleventh Circuit Court of Appeals and other courts have addressed questions about what content must be included in EEOC charges in order to preserve a plaintiff's right to later litigate specific claims. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970), Houston *v. Army Fleet Services, L.L.C.* 2007 WL 1747142, 6 (M.D.Ala., 2007).

The Eleventh Circuit noted that judicial claims are allowed if they "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate. *Wu v. Thomas,* 863 F.2d 1547 (11th Cir.1989). (Citation Omitted).

The Eleventh Circuit stated that in light of the purpose of the EEOC exhaustion requirement, this circuit has held that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1332 (11th Cir.2000) (Internal Quotation And Citation Omitted); *Sanchez,* 431 F.2d at 466 (noting that the allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge). Courts are nonetheless "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." *Sanchez,* 431 F.2d at 460-61. As such, the Eleventh Circuit has noted that " 'the scope of an EEOC complaint should not be strictly interpreted' " Id. at 465 (citation omitted).

The proper inquiry here therefore is whether Plaintiff's complaint was like or related to, or grew out of, the allegations contained in her EEOC charge. In *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277 (11th Cir. 2004), the court addressed the issue of whether Dr. Gregory could bring a claim of retaliation when she had not checked the box on her EEOC

charge. Gregory had instead checked the box for race and gender, but brought her claim for race and retaliation.

The Eleventh Circuit found that the ultimate act that Dr. Gregory complained was that she was terminated. At the point at which she filed the charge, she "believe[d]" that she was terminated because of her race and sex. She set forth the relevant dates of discrimination in the charge, as well as the reasons why she believed she was terminated. Although not clear in the record, the EEOC presumably investigated, at least in some fashion, the possible reasons why Dr. Gregory was terminated, growing from her initial "belief" that it was because of her race and sex.

The court further stated that "Indeed, there could be various permutations of non-legitimate reasons why an employee is ultimately terminated. In Dr. Gregory's situation, for example, it could be that race and sex were the only reasons, as she initially believed, why she was terminated. It could also be, however, that Dr. Gregory was terminated in retaliation for having complained about Dr. Fuller's disparate treatment of her, inter alia, during physician scheduling and patient assignments. It could further be that she was terminated for actual legitimate reasons, which is not likely the case here because there is a $10,000 jury verdict in favor of Dr. Gregory suggesting otherwise." *Id. at 1280.*

In reaching it's result in Gregory, the Eleventh Circuit reasoned that the "ultimate act that she complained about [in the EEOC charge] was that she was terminated" and that consequently the EEOC's investigation of the charge would presumably include an investigation of the possible reasons for the termination which could include retaliation for the plaintiff's having complained about race and sex discrimination. *Id. at 1280.*

In the instant case, it is undisputed that Mrs. Cannon complained about her non promotion. After the complaint her job performance was put in issue. Mrs. Cannon's judicial complaint was like or related to, or grew out of, the allegations contained in her EEOC charge. *(Cannon's Affidavit, ¶ ¶ 1 & 2.)* The EEOC's investigation of the charge would presumably include an investigation of the possible reasons for her termination.

When a retaliation claim is based on adverse actions taken against the employee after the initial EEOC charge is filed, it can be said that the retaliation claim grows out of a properly filed employment discrimination charge, and it is not necessary for a plaintiff to file a second charge specifically alleging retaliation. *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir.1988).

**MRS. CANNON CAN MAKE OUT A PRIMA FACIE CLAIM OF RETALIATION.**

In *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir. 1996), the Eleventh Circuit held that, while "[w]e have recognized that protected conduct closely followed by adverse action may justify an inference of retaliatory motive," nonetheless, "the phrase 'closely followed' must not be read too restrictively where the pattern of retaliatory conduct begins soon after the [protected action] and only culminates later in actual discharge." Temporal proximity is only evidence of causation not a separate element of the prima facie case." *Haywood v. Lucent Technologies, Inc.* 323 F.3d 524, 533 (7th Cir. 2003).

In the instant case, Mrs. Cannon has alleged that she was denied a promotion even though it was the practice to promote from within the company. *(Cannon dep. P. 14 and 15).* Further the undisputed evidence shows that Chris Black informed Mrs. Cannon that he would not promote her because of the impression that it would leave on rednecks. *(Cannon dep. P. 19).*

The two most glaring deficiencies in Defendant's Motion are any facts disputing Mrs.

Cannon's deposition testimony and any facts that prior to Mrs. Cannon registering a complaint concerning that would show that she was a problematic employee. We further ask this Court to take judicial notice that the term "redneck" is used to refer to a white person, and further that because Mrs. Cannon is an African-American the only reason for not promoting her was because of race. Such evidence supports Mrs. Cannon's assertions that the non-promotion in the instant case was fueled by racial discrimination.

Based on the above we submit that there is a casual connection between the complaining of a non-promotion and the termination of employment. In, *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985). It was noted that the plaintiff merely has to establish that the protected activity and the adverse action were not wholly unrelated.

The record is replete with evidence that Mrs. Cannon opposed the unlawful employment action. Mrs. Cannon in her deposition testified that:

```
5      So, whenever I did not get the
6   position, I contacted Cindy Williams to
7   complain to her about me being passed over
8   for the position. And she suggested that I
9   make my concerns known to Chris Black and
10  then contact her back and let her know what
11  he said. And that is what I did.    (Cannon dep .P. 14).
```

Based on the above, we submit that Mrs. Cannon has met the burden of that making out a prima facie claim of retaliation, and the Motion for Summary Judgment should be denied.

## MRS. CANNON WAS TREATED DIFFERENTLY

Under *Title VII*, a civil rights plaintiff may establish a prima facie case of sex discrimination by 1) being a member of a protected class, 2) demonstrating qualification for the job position, and 3) showing she was the subject of disparate treatment as compared to "similarly situated" persons outside of the protected class. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,

506 (1993); *Latham v. Dep't of Children and Youth Services*, 172 F.3d 786, 792 (11th Cir. 1999).

Demonstrating a prima facie case is not onerous, rather it only requires that a plaintiff provide

enough evidence to permit an inference of discrimination. *Texas Dep't of Cmty. Affairs v.*

*Burdine,* 450 U.S. 248, 253-54 (1981). At the summary judgment stage, the burden of

establishing a prima facie case is minimal. *St. Mary's Honor Ctr.*, 509 U.S. at 506.

Defendant relies on Mrs. Cannon's deposition testimony in support of their argument that

she cannot identify any similarly situated white person. However, Defendant fails to offer any

facts to rebut Mrs. Cannon's testimony that Chris Black informed her that she was passed over

for a promotion because the company deals with "rednecks" and if they put her in that position,

they would look at him like he was crazy. *(Cannon dep. P. 19)* Furthermore, defendant does not

dispute, Mrs. Cannon deposition testimony in which she testified that:

```
12  A      Okay.  A position became open,
13  branch operations manager position, and
14  someone else was hired in that position
15  other than myself.
16  Q      Who was hired?
17  A      Mike -- Michael Haynes.  And my
18  understanding was that since Chris, who was
19  the branch manager and also a white male --
20  he was promoted from sales manager to branch
21  manager.  And Michael -- Tom Cleveland, who
22  was my supervisor before Michael Haynes
23  came, he was promoted from warehouse manager
```

15

```
1  to branch operations manager before I came
2  and he was also a white male.  So, my
3  understanding was that I would also be
4  promoted to the BOM position.
```
*(Cannon dep. P.   14 and 15)*

Further the undisputed evidence shows that Chris Black informed Mrs. Cannon that he

would not promote her because of the impression that it would leave on rednecks. *(Cannon dep.*

*P. 19).*   The undisputed facts show that Mrs. Cannon followed the defendant's procedure and

complained about the non-promotion.   *(Cannon dep. P. 5)* In addition the undisputed facts

shows that Mrs. Cannon's work activities was scrutinized more closely than other employees and

that prior to her complaints she was not subject to such scrutiny.   *(Cannon's Affidavit, ¶2.)*

.        Based on the above, we submit that Mrs. Cannon has established a case of disparate

treatment, and Summary Judgment should be denied.

## MRS. CANNON CAN PROVE PRETEXT

Plaintiff has presented more than sufficient proof to establish a circumstantial case under

the *McDonnell Douglas* burden shifting scheme. *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), As the Eleventh Circuit explained:

> Unlike some other torts, in which state of mind can be inferred from the
> doing of the forbidden act, the employer's state of mind cannot be inferred
> solely from the fact of the adverse employment action--in other words,
> whereas in an action for battery the defendant's intent to cause harm may be
> inferred solely from the fact that he was swinging a baseball bat at the
> plaintiff, an employer's intent to discriminate cannot be inferred solely from
> the fact that he discharged an individual with a protected personal
> characteristic.

*Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999). The test developed in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),

created a presumption to assist plaintiffs in bringing employment claims.

Once the plaintiff has presented sufficient evidence to establish a prima facie case,

unlawful discrimination is presumed. See *Walker v. Mortham,* 158 F.3d 1177, 1183 (11th

Cir.1998). The defendant-employer can rebut this presumption only by articulating a legitimate,

nondiscriminatory reason (or reasons) for the adverse employment action. See *Id. at 1184*. If the

employer produces evidence of legitimate reasons for the job action, then the *McDonnell*

*Douglas* presumption "drops from the case," with the plaintiff still bearing the burden of proving that, more probably than not, the employer took an adverse employment action against him on the basis of race. See *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-08, 113 S.Ct. 2742, 2747-48, 125 L.Ed.2d 407 (1993).

While the plaintiff has the burden of proving illegal discrimination, the *McDonnell Douglas* presumption makes the plaintiff's task somewhat easier. *Wright v. Southland Corp,* 1999 WL 688051, 3, No. 97-3458 (11th Cir., Sept. 3, 1999). The plaintiff may use the evidence of the employer's proffered reasons for the adverse employment action to show that these proffered reasons are a pretext for discrimination. See *St. Mary's Honor Center v. Hicks*, 509 U.S. at 516-17, 113 S.Ct. at 2752. (stating that "proving the employer's [proffered] reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination").

There is a clear history of racial animus in the promotional process against Mrs. Cannon where similar situated white employees have been promoted.  In her deposition, Mrs. Cannon testified that Chris Black her supervisor informed her that she was passed over for a promotion because the company deals with "rednecks" and if they put her in that position, they would look at him like he was crazy. *(Cannon dep. P. 19).*  Mrs. Cannon denial of a promotion was not based on any reason related to customer skills, or any tests, in fact Defendant has not offered any facts that shows that it has an established criteria for promotion. This statement which is undisputed provides sufficient evidence of racial animus.

**MRS. CANNON CAN PROVE DISPARATE SUPERVISION.**

Whether Mrs. Cannon's race was a motivating factor in the disparate treatment accorded her by her supervisor, Chris Black is a question of material fact about which there are a multitude of disputed factual issues.

Under the framework established in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973), direct evidence of discriminatory motive is not required to prove intentional race discrimination.

Rather, Mrs. Cannon may establish a prima facie case of intentional discrimination by showing:

a. That Mrs. Cannon is a member of a protected class, i.e., an African-American;

b. That she was treated less favorably than similarly situated white employees; and

c. That there is sufficient evidence of disparate treatment so that a causal link between Mrs. Cannon's race and her disparate supervision can be inferred.

Once Mrs. Cannon's has established a prima facie case, the burden shifts to the Defendant to produce evidence of a lawful, nondiscriminatory reason for its action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

If the employer meets this burden, the Plaintiff must show that the employer's proffered reason was just a pretext for its actions. *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 425, (1975).

In proving discriminatory intent, Mrs. Cannon need not prove the absence of all other motives. Rather, it is her burden to show that "an impermissible motive played a motivating part in an adverse employment decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989). Mrs. Cannon meets this burden if "one of th[e] reasons" for her disparate treatment and constructive discharge was her race. Id.

Courts have long recognized that an employer's true motivations are especially difficult to establish, making such factual determinations "generally unsuitable for disposition at the summary judgment stage." *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993); *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716, (1983). At summary judgment, Mrs. Cannon's burden is simply to raise a genuine factual question as to the existence of pretext. "The plaintiff is not required to introduce evidence beyond that already offered to establish the prima facie case." *Hairston,* 9 F.3d at 921; *Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981), ("Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.") Summary judgment is appropriate only when evidence of discriminatory intent is totally lacking. This will seldom be the case when the "elusive factual question" of intentional discrimination is involved. *Mulhall v. Advance Security, Inc.,* 19 F.3d 586 (11th Cir. 1994).

A factual question of intentional discrimination is involved is presented in Mrs. Cannon's undisputed deposition testimony which was:

```
12  A      Okay.  A position became open,
13  branch operations manager position, and
14  someone else was hired in that position
15  other than myself.
16  Q      Who was hired?
17  A      Mike -- Michael Haynes.  And my
18  understanding was that since Chris, who was
19  the branch manager and also a white male --
20  he was promoted from sales manager to branch
21  manager.  And Michael -- Tom Cleveland, who
22  was my supervisor before Michael Haynes
23  came, he was promoted from warehouse manager
```

15

```
1   to branch operations manager before I came
2   and he was also a white male.  So, my
```

3   understanding was that I would also be
4   promoted to the BOM position.
**(Cannon dep. P.    14 and 15)**

Mrs. Cannon further testified that Chris Black was the branch manger for the defendant

when she was employed there. *(Cannon dep. P.    12)* In her deposition, Mrs. Cannon testified

that Chris Black informed her that she was passed over for a promotion because the company

deals with "rednecks" and if they put her in that position, they would look at him like he was

crazy. *(Cannon dep. P.  19)*

The above evidence of racial disparate treatment establishes a prima facie Title VII case.

As these events are denied by Defendant, material issues of fact exist, therefore Summary

Judgment should be denied.

For the reasons listed above, Plaintiff respectfully requests that the Court deny summary

judgment and allow this case to proceed to a trial on the merits.

**RESPECTFULLY submitted** on this the  8    day of August, 2008.

Deborah M. Nickson
Attorney for Plaintiff

OF COUNSEL:
Deborah M. Nickson
2820 Fairlane Drive, Ste A-10
Montgomery,  AL  36116
334-213-1233

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CERTIFICATE OF SERVICE

     I, Deborah M. Nickson, do hereby certify that a true and correct copy of the foregoing Plaintiff's Response and Memorandum has been served on all counsel of record, by mailing a copy of the same in the U.S. Mail, envelope properly addressed and postage prepaid on this ___8th___ day of August, 2008.

                         Deborah M. Nickson
                         Attorney for Plaintiff
                         2820 Fairlane Dr. Ste A-10
                         Montgomery, AL  36116
                         334-213-1233

WILLIAM K. HANCOCK
ADAMS and REESE, LLP
Attorneys for Defendant
2100 3rd Avenue North, Suite 3100
Birmingham, Alabama 35203

STATE OF ALABAMA
MONTGOMERY COUNTY

AFFIDAVIT OF AISE CANNON

Comes now, Aise Cannon who is the plaintiff in the above styled proceeding, and is over the age of 19, and having been first duly sworn and placed under oath to speak the truth, do hereby state the following:

1. I believe that the reason for my termination from the employ of Lansing Building Products, Inc was because I complained about the failure of Lansing to promote me to branch operation manager, and I further believe that the reasons that I was denied the promotion was because of race, African-American.

2. After I complained about the promotion my work activities was scrutinized more closely than other employees and that prior to the complaint I was not subject to such scrutiny.

3. I was unemployed from June 5, 2006 to September 2006.

_____
AISE CANNON

STATE OF ALABAMA  ( Georgia )
COUNTY OF MONTGOMERY ( Gwinnett )

Subscribed and sworn to and acknowledged before me by ___Kerry Ladrigau___
_____, this the ___5___ day of August 2008.

SEAL

KERRY LADRIGAN
Notary Public
Gwinnett County
State of Georgia
My Commission Expires Jul 23, 2011

_____
Notary Public

```
 1    A          Yes.

 2    Q          Do you know of any Lansing

 3    employee who was ever suspended, instructed

 4    not to come back to work, came back to work

 5    and was not terminated?

 6    A          I don't know of any.

 7    Q          About a year earlier, Ms. Cannon,

 8    you had made a complaint to the Lansing

 9    human resources department; is that true?

10    A          Yes, I did.

11    Q          Do you know who you spoke with up

12    there?

13    A          Cindy Williams.

14    Q          Cindy Williams?

15    A          Yes.

16    Q          Are you familiar with Lansing's

17    employee handbook?

18    A          Yes, I am.

19    Q          Are you fairly conversant with

20    it?  I mean, you read it and understood it?

21    A          Yes, I did.

22               (Defendant's Exhibit No. 2

23                was marked for identification.)
```

1  marked as Exhibit 4; is that correct?

2  A       Yes, it is.

3          MR. HANCOCK:  For the sake of

4  paper, do you mind if I not attach that as

5  an exhibit just so it's --

6          MS. NICKSON:  No.

7          MR. HANCOCK:  But we know that

8  Exhibit 4 was attached to Exhibit 6.

9  Q       (BY MR. HANCOCK:)  Now, did you

10 have a lawyer at the time you sent the

11 letter to the EEOC on July 25th, 2006?

12 A       Not at the time.

13 Q       Tell me why you -- well, did you

14 file that July 25 letter with the EEOC for

15 information purposes, to put the EEOC on

16 notice of something, or why did you file

17 it?  Do you remember?

18 A       I was going through the process

19 of what -- when I called the EEOC, they gave

20 me a list of steps that I had to go through

21 and I was following their procedures.

22 Q       Did you go to an EEOC office?

23 A       Initially?  Is that what -- can

1           MR. HANCOCK:   She can get it, but

2    we can't.   So, if you'll send me a copy of

3    that --

4           MS. NICKSON:   I don't mind giving

5    you a copy, Counselor.

6    Q       (BY MR. HANCOCK:)   When you sent

7    the letter to the EEOC in July of 2006, you

8    weren't asking the EEOC to do anything yet,

9    were you?

10   A       Yes, I was.   But as I said, we

11   have to follow certain procedures.

12   Q       Well, show me in the letter where

13   you're asking the EEOC to take any action.

14   A       Now, in this letter it's not

15   directly asking for action taken.

16   Q       Now, referring -- well, before I

17   ask that , is there anything in that letter,

18   Exhibit 6, that makes reference to the

19   promotion that you didn't get in May of

20   2005?

21   A       Well, as I stated in the first

22   paragraph, when I started with this company

23   I was told that Lansing Building Products

1  Q        What did you tell him about that?

2  A            Well, the statements that he made

3  was that I was passed over because, first of

4  all, I need to have thick skin and that we

5  deal with rednecks and if they -- if he were

6  to put me in that position, they would look

7  at him like he's crazy and that a lot of the

8  customers think that I'm an airhead.  And he

9  also said that to be frankly honest, your

10 customer service skills suck.

11           And then I asked him -- I asked

12 him, well, I had been there for seven

13 months.  Why haven't you discussed this with

14 me previously as far as my customer service

15 skills?  Because it was never mentioned.

16 Q        Is there anything else that you

17 told Chris about the conversation you had

18 with Cindy Williams?

19 A            The only conversation that Cindy

20 Williams and I discussed was about the

21 promotion.  That was it.

22 Q            But what I'm asking you is is

23 there anything else that you told Chris

```
 1   Q        I want to show you what I'm
 2   marking as Exhibit 2.  Is that the handbook?
 3   A        It is.
 4   Q        And I don't know what page it's
 5   on.  I think it's page eight.  There's an
 6   open door policy in that handbook, isn't
 7   there?
 8   A        Yes, there is.
 9   Q        It says, "Chris' door is always
10   open"?
11   A        Yes.
12   Q        Who is Chris?
13   A        Chris Black was the branch
14   manager at the time I was there.
15   Q        Well, the employee handbook makes
16   reference to Chris.  Do you think that's
17   making a reference to Chris Black?
18   A        What page did you say?
19   Q        I think it's about page eight or
20   so, the open door policy.
21   A        I don't see it on page eight.
22   Q        Maybe it's page 10.  I'm sorry.
23   I haven't memorized it yet.
```

```
 1   A          Yes.

 2   Q          You don't -- do you know who

 3   Chris Lansing is?

 4   A          Yes.  Chris Lansing is the

 5   president of the company.

 6   Q          Do you think that the Chris that

 7   the open door policy refers to is Chris

 8   Lansing, the president of the company or

 9   Chris Black, your supervisor?

10   A          Chris Black, branch manager, my

11   department head.

12   Q          Was it your understanding that

13   you could complain all the way up the

14   channels of the Lansing Building Products

15   company if you had an employee complaint?

16   A          Yes, it was.

17   Q          You felt comfortable raising

18   concerns that you had about your employment

19   all the way up the channels in the company,

20   didn't you?

21   A          Yes, I did.

22   Q          You have a military background,

23   don't you?
```

```
 1  A          Yes, I do.
 2  Q          You understand procedures and
 3  protocols?
 4  A          Yes.
 5  Q          And you understand that you
 6  always have a recourse if you have a
 7  complaint to go up --
 8  A          Yes, I do understand that.
 9  Q          -- a pecking order?  Tell me
10  briefly about the complaint you made to
11  Cindy in May of 2005.
12  A          Okay.  A position became open,
13  branch operations manager position, and
14  someone else was hired in that position
15  other than myself.
16  Q          Who was hired?
17  A          Mike -- Michael Haynes.  And my
18  understanding was that since Chris, who was
19  the branch manager and also a white male --
20  he was promoted from sales manager to branch
21  manager.  And Michael -- Tom Cleveland, who
22  was my supervisor before Michael Haynes
23  came, he was promoted from warehouse manager
```

1  to branch operations manager before I came

2  and he was also a white male.  So, my

3  understanding was that I would also be

4  promoted to the BOM position.

5         So, whenever I did not get the

6  position, I contacted Cindy Williams to

7  complain to her about me being passed over

8  for the position.  And she suggested that I

9  make my concerns known to Chris Black and

10 then contact her back and let her know what

11 he said.  And that is what I did.

12         (Defendant's Exhibit No. 3

13         was marked for identification.)

14 Q      I'm going to show you what I'm

15 marking as Exhibit 3.  Is that the

16 information you sent to Cindy with regard to

17 the promotion we just discussed?

18 A      This was in August.

19 Q      2005.

20 A      Yes.  This was in August.  This

21 was after I was passed over for the

22 promotion.

23 Q      But that's a packet of

```
 1          I, Dana Gordon, a Court Reporter

 2  of Birmingham, Alabama, and a Notary Public

 3  for the State of Alabama at Large, acting

 4  as Commissioner, certify that on this date,

 5  as provided by the Federal Rules of Civil

 6  Procedure and the foregoing stipulation of

 7  counsel, there came before me on the 28th

 8  day of May, 2008, at the law offices of

 9  Ingrum, Rice & Parr, 410 Second Avenue,

10  Opelika, Alabama 36801, commencing at

11  approximately 8:58 a.m., AISE CANNON,

12  witness in the above cause, for oral

13  examination, whereupon the following

14  proceedings were had:

15                  AISE CANNON,

16  being first duly sworn, was examined and

17  testified as follows:

18          THE COURT REPORTER:  Usual

19  stipulations?

20          MR. HANCOCK:  Yes.

21          MS. NICKSON:  Yes.

22  EXAMINATION BY MR. HANCOCK:

23  Q          Would you state your name for
```